There are two appeal numbers here, 21-3198 and 21-3207. And we'll begin with oral argument from the appellant, Mr. Loewy. Good morning, Your Honors. May it please the Court, Jonathan Loewy for Plaintiff Appellants. I'd like to reserve five minutes for rebuttal. Your Honors, the plaintiffs in these cases alleged all elements of their claims and more, in more detail than required, including causation. But the courts improperly rejected the allegations, applied the wrong causation standard, and then misapplied it. This was error and should be reversed. How was the causation standard that Judge Griesbach and Judge Pepper applied incorrect? Well, Your Honor, the test, of course, under Wisconsin law is a substantial factor. And it's essentially that so long as a reasonable person would find that armsless conduct was a substantial factor or a factor in causing the harm, there is causation to go forward. The judges used a sort of but-for test. They didn't call it that. But their main arguments was this would have happened anyway. Guns are readily available. Both killers would have gotten the gun from some other source. Now, that is simply speculation. It is not a defense at any level, but it is certainly not a defense on a motion to dismiss. We're entitled to get to the facts, and armsless can try to prove that if they want. But under the facts that were alleged, there was no other source of the guns. And if that were a defense, that sort of guns are everywhere, so a gun supplier can't be liable for a shooting, of course, the Wisconsin Court of Appeals decision in Olson v. Ratzel would have come out different. There, a gun dealer was held responsible. It could have been a defense that the person, minor, could have gotten the gun somewhere else. Supreme Court of Indiana in the city of Gary case, Supreme Court of Ohio in the city of Cincinnati case, New York Appellate Division, the Williams v. B. Miller case, and many more courts around the country have recognized that if you are negligently involved in the supplying of firearms to enable prohibited people to get them, you can be liable. And you can understand why we're capping to Wisconsin law. And as I understand, your citation to the reasonable person standard comes from the Retzloff decision, which is cited in the footnotes to the jury instruction. And that itself is an incorporation of Restatement Second 431. Is that correct? That's where you're relying on the reasonable person? I believe so, Your Honor. I mean, many cases state the reasonable person, reasonable juror standard. Well, the most recent opinion we have from the Wisconsin Supreme Court on this issue of causation from 2020 talks about substantial factor, talks about a cause, not the cause, which of course is the law under the instruction. It doesn't utilize that reasonable person standard, though. So if we're going to be applying the most recent Wisconsin pronouncement with regard to causation, and we rely on that case, it's the substantial factor test that we'll control. With all due respect, Your Honor, I don't think it makes a difference. I mean, all of the case law says that causation is almost always a jury question. It is a quintessential factual issue. It's not a legal question, except at the real extremes. So whatever it's termed, it is a very extreme fact pattern that would allow a court to take the causation issue out of the hands of the jury and not even allow discovery. I mean, it's important to note that every issue that Armsless raises and that the courts found below can be heard again on a factual record after discovery on summary judgment. And Wisconsin law, in our view, demands that. Mr. Laue, can I ask you a question about the public policy factors? Is that an appropriate set of considerations in your view at the motion to dismiss stage? Wisconsin law states it can be, but again, it's a really extreme fact pattern. I mean, the Wisconsin Supreme Court has said that the better practice is to allow for even trial, but certainly discovery, to have a factual record. And this case proves it. I mean, one of the issues of the two main issues in public policy that the Weber Court found, one of them was that the injury is wholly out of proportion to basically the effect on Armsless because it said it would destroy Armsless business to be held liable. That was rank speculation. There's no evidence to show that it would destroy its business. And in fact, the allegations are that competitors of Armsless are in business and have some of the reasonable measures that would have prevented these two killers from obtaining guns. Is there Wisconsin law that informs when the consideration of the public policy factors is appropriate at the motion to dismiss stage and when it's not? I know. The reason, this is just unclear to me in preparing for the case. I know what the factors are, one through six, all of that. I know how you both argue them out and how Wisconsin has treated them at the dismissal stages where it's not entirely clear to me. Well, Hornback, Wisconsin Supreme Court, says the better practice is to refrain from taking a negligence issue away on the basis of public policy until after trial. Now, that's better practice. So, Your Honor, it certainly allows for more. I'm not aware of anything that states the standard more clear than that. But again, it's an extreme fact pattern. And the public policy findings of the Weber Court, one was the out of proportion, this will destroy Armsless business decision, which was total speculation and contrary to the allegations. And the other issue was that the court held that the injury was too remote because the court found that the killing was a superseding cause. That was completely contrary to Wisconsin law, which accepts the restatement where if the criminal act is a foreseeable result of the negligent conduct, it's not a superseding cause. And that's clearly the case here. On the question of causation, you'd like to get to discovery. What do you envision in how you'd go about discovery on causation? What's the sweep or how broad? One category of discovery is the business practices and model of Armsless. And basically, and I'm speaking somewhat loosely here, but we can assume that at this stage that we're going to find the worst facts for Armsless. And essentially, we allege that Armsless is kind of a gunsforkillers.com. It was something, and that discovery would prove some aspect of this, that there was this intentional, deliberate conduct by Armsless to create a marketplace which would enable and attract people who are prohibited from buying and selling guns to do exactly that. And that when they knew with certainty, as they did, that they were enabling and facilitating murders, they continued that practice. Is that in question their distribution approach? Is that in question, Your Honor? Yeah, I mean, you said you'd want to develop that, but is there some hidden factor in the way they go about their business that's not apparent to you at this point or the court? Well, we have the business practices. We don't have what were the discussions among Armsless. We also don't have the facts of these two killers and how this gun actually led to the two shootings. And that would give the court a much greater basis to decide a causation. Is it your view we're talking about the proximity from their initial sale to the hands of the killer? Or what if it went through three hands or four hands? I'm trying to focus in on what causation could develop through discovery. Well, one, the key factor most likely is foreseeability. How foreseeable was it that these practices would supply a potential killer and lead to a homicide? Then it really, in my view, doesn't matter how many steps there are. If you're supplying the criminal market, the nature of the criminal gun market is there's going to be a lot of transfers. But if the court felt that there was a cutting-off point, that a certain number of steps should cut off causation, I disagree with that. But that can only be established after discovery. And so a factual record really is needed. Thank you. So I think it might be helpful to think about if this were an issue other than guns, to consider how these causation rulings are incorrect. If this case involved a business or someone who was selling illegal drugs, let's say, or selling alcohol to someone who was intoxicated or a minor, there would be no defense that in Wisconsin it's easy to get served beer if you're intoxicated, or it's easy to buy heroin. I'm not so sure of the bookend. What you're doing is you're going to the bookends. I don't know that the bookends help you much because it would be the same thing if you said Home Depot is responsible for the shovel that so-and-so bought to commit a terribly violent crime once he got out of jail. I think you've got to stay within – you're talking about a good here, a firearm, that can occur in a lawful transaction. It can. I mean, you acknowledge that. And I think your better argument is the one that you were trying to set forth – or that you did set forth in your brief about the way that they have structured the website to default to these private transactions against the backdrop of all the notice they've had regarding the nature and scope of the demand for the products. That's exactly right, Your Honor. It's all about armsless practices, not the fact that they created a gun marketplace, but how they did and what they did. And not only did they default the listings to private parties, but they did other things. Like when they knew, because of studies, that most of the sellers on their website were willing to and happy to violate law, to illegally sell guns, what did they do? They allowed, in this case, Caldwell, to post over 200 guns on the website for sale. Anyone knows that is blatantly violating federal law. He was convicted for it. It was right under armsless' nose. Armsless enabled it and allowed it. And they easily could have prevented that. They easily could have allowed – they could have required buyers and sellers to simply register with the website. Would you mind, just in the interest of time, can I shift you to a different topic to get the benefit of your perspective on this? Absolutely. Okay. The defendant, the individual defendant, the member of Armsless, Jonathan Gibbon. Personal jurisdiction question. Where in the complaint do you draw a line? Where do you connect Mr. Gibbon as an individual and Wisconsin as a forum state? And so here's the reason I'm asking. My impression from reading your two complaints is that it seems like what you're trying to do is use armsless connections with the forum state and effectively trying to get them to flow through or attach to Mr. Gibbon as an individual. I guess my questions are, is that a mistaken impression of the complaint? And if it's not a mistaken impression, what authority is there in the law of personal jurisdiction to kind of have that flow through analysis? I don't know of any other way to say it. Well, Your Honor, and we do allege piercing the veil. We do allege that Mr. Gibbon essentially used armsless as his alter ego. It really was Gibbon acting through this corporate entity. Yeah, but the claim that you plead doesn't answer the personal jurisdiction question. That's about contact or lack of contact with the forum. I will answer the question, Your Honor, but first I'd say personal jurisdiction. We believe, of course, Weber Court found personal jurisdiction. My question is very specific about where in your complaint because I just read it as, hey, armsless had a lot of connection with the forum. I'll grant you that. You pled that. And I think what you're saying between the lines is let that kind of flow through and attach to Mr. Gibbon as an individual. You're not saying it that directly. And I think, okay, but is there any legal authority for that? Because it just seems counter to the way we usually think about personal jurisdiction. Your Honor, I mean the complaint has the allegations that we have. I do think a couple things in personal jurisdiction. One, armsless waived the issue because they didn't cross appeal it, so we don't believe it is properly before this court. And two, under Seventh Circuit precedent, we were entitled to amend the complaint to add facts about personal jurisdiction. The judge in Bauer actually said that we would be allowed to amend but told us to, recommended that we wait and then enter judgment without giving us the opportunity. So I think that, I'm not dodging your question, but I think that those are our main arguments in personal jurisdiction. I'll be granting you a couple minutes in rebuttal. Not right now. Thank you. Thank you, Your Honor. Mr. Sutherland. May it please the Court. I'm Brian Sutherland for Arms List and John Gibbon. I want to start with something my colleague just said, which is that Arms List is a seller of firearms and that it is a supplier of firearms. Both of those assertions are not pleaded in the complaint and they're entirely incorrect. I think it's worth remembering here that we're talking about a website. It's a website that publishes listings that third parties provide about firearms. That's an important point and it distinguishes this case from every other case in which a supplier or manufacturer or a seller was held liable for selling firearms to, say, a miner, which is the Olson v. Ratzel case. This is not that case. This is a highly unusual case. There's not another case like it in the state of Wisconsin, which explains why the district court was able to reach the result it reached on the pleadings. It was able to conclude that there was no causation here, both as a matter of substantial factor analysis, which is the analysis the district court said it was applying, and we should take the district court at its words, its analysis was correct. And I'll address both of the cases here. One's Bauer. The other is Weber. In Bauer, the complaint alleges that Shamari LeGette acquired a weapon from the, quote, broader criminal market in Chicago. He would have obtained that weapon from the broader criminal market in Chicago without regard for anything that Arms List did. The complaint cannot and does not plausibly allege that Arms List activities in Wisconsin created the broader criminal market for firearms in Chicago. That market would exist without regard for anything that Arms List did. So that's Bauer. The ruling there is clearly correct. With respect to Weber, the complaint also shows on its face that Sarah's estranged husband was a person committed to a course of violence and had murderous impulses. That's alleged at paragraph 149 of the Weber complaint. The complaint also shows that he was violent because he committed acts of rape and assault just two weeks before the murder. He was also a person who apparently had nothing to lose because the complaint shows that he killed himself in the course of these acts. All of these, the commitment to the course of violence that the complaint demonstrates shows that Sarah's estranged husband would have acted violently without regard for anything Arms List did or didn't do. And the complaint here shows, too, that the duty they seek to impose or the standard of ordinary care in the language of Wisconsin law flows from the publication of the third-party advertisements. And how do you know that? Can I pause you there? I think your description of the allegations around just calling Mr. Schmidt – I don't know what his first name is – Mr. Schmidt, I think that's fair. But why isn't it plausible to conclude or to infer that, therefore, upon his release from jail, even with the GPS, etc., that he may well be in the market as a prohibited person, to be sure, for a firearm? And, therefore, the service, if you will, that your client offers is an attractive outlet for him to try to find a willing supplier of that firearm because he knows that he can consummate the transaction privately. You see what I'm getting at there? Why isn't that, at the pleading stage, a plausible inference? It's plausible that he's in the market for a firearm. Because that's, I thought, what you were saying is, like, look, this guy's got a lot of problems. He's essentially unhinged. He was going to do it anyway, and he was going to find a supplier. Or another weapon. Or another weapon. Private sales are legal in Wisconsin. He could have found another private seller, or he could have found another weapon. The injury is the murder, not the acquisition of a firearm from a person that the killer found, apparently, by meeting someone. Why is it implausible to view what happened, though, as a substantial factor contributing to Sarah Schmidt's death at the pleading stage? Why is it just – it's implausible in your view. Why? It's implausible because the complaint shows that the murder would have happened anyway. And that's a proper analysis under the Restatement of Tort, Section 432, which, if I have it in front of me, the actor's negligent conduct is not a substantial factor in bringing about harm if the harm would have sustained, even if the actor had not been negligent, with exceptions for cases where there are two forces acting at the same time, like when two fires start. This is not that case. So you either credit the complaint's allegations that this is an unhinged murderer, or you don't. But if it's an unhinged murderer, then the murder would have happened anyway, and therefore, a failure to take precautions, which is what this case is about. It's a failure – an alleged failure to take precautions. In that situation, the purported or alleged failure to take precautions is just not a substantial factor. And that's what the Restatement of Tort says. Of course, it's not our only argument. There's also the matter of legal proximate cause. And I do want to talk about superseding cause because a criminal act is, in fact, a superseding cause in Wisconsin with an exception under Section 448 where the actor's negligent conduct creates a situation which affords the third party the opportunity to commit the crime. In that situation, superseding cause would not bar the liability. But here it does as a matter of legal proximate cause analysis because posting third party advertisements doesn't afford anyone an opportunity to commit a crime. And I just want to emphasize again, we're talking about a website here, not a gun store. Despite all the times the plaintiffs put the word store in quotation marks in their complaint, it's not a store. It's a website posting advertisements that are perfectly legal, and I do want to circle back to that point. The reason why I know that is because the Wisconsin Supreme Court said so very clearly in the Daniel v. Arms List decision. In that case, the plaintiff offered exactly the same theory that they are offering here. They asked the Wisconsin Supreme Court to recognize a new negligent website design tort so that they could get around the Communications Decency Act, and the Wisconsin Supreme Court refused to do that. It has already said to this court, in language that is binding, that claims like these treat a website as the publisher of third party advertisements, and that the liability that claims like these seek to impose is an alleged liability that flows from the publication of third party advertising. Let's use that as a segue, though, to talk about the Communications Decency Act because it's really flipped, right? We're a federal court sitting in diversity applying Wisconsin law. They were a state court interpreting a federal statute, and that interpretation obviously is not binding on us. We're allowed to do our own. We've got a very articulate opinion from the Court of Appeals, a very articulate opinion from the Supreme Court interpreting that act. As I understand the issue with regard to that, you're indicating that the pleadings here do not go to the setup of the website. Explain how that's the case. It's one of two things. Either, as the Wisconsin Supreme Court held, allegations like these are essentially claims for negligent publication of advertising, or the tort they're asking this court to recognize as a species of product liability or negligent product design, like the court in the Lemon case and the Georgia case, which is Maynard. Those are product liability cases. And you see the plaintiff asking the court to apply a product liability type analysis at page 150 of the supplemental appendix where they provided those authorities to the district courts below and said, here's a product liability standard that you could apply, just like in these cases. But those cases are helpful illustrations of how different this case is from those cases. In the Maynard case and the Lemon case, there was an app that people downloaded on their phone. It showed how fast they were going. And they could take a picture of themselves while they were violating the law by going over 100 miles an hour, extremely reckless conduct. In that case, the product itself directly encouraged reckless conduct, that is, speeding in excess of 100 miles an hour. They crashed while they were trying to take that picture, and they were injured or died. In this case, though, and Your Honor asked about, well, didn't they structure the website to encourage some kind of conduct? I think it's important to be specific about what we mean when we're talking about structuring the website. In Maynard and in Lemon, there was this really direct connection between what the website did and the injury that followed. In this case, the structure of the website boils down to an assertion that people could list firearms for sale by private sellers. But the Wisconsin Supreme Court has said that's perfectly legal conduct. And so if the claim is based on the existence of a website that encourages people to share information about private sales of firearms, that's not a claim. I think the fairer import of the complaint, you can push back on this, is that the marketplace, if you will, that is created, that forum that's created by the website, has defaults that are set up. You know what I'm talking about, the private party tagging, et cetera. I think that's what your adversary is saying with respect to the design of it. It's not like an information sharing forum. So if you go in there and you don't change the defaults, you're able to avoid, evade background checks, et cetera, and execute these transactions as private transactions. I mean, I'm looking right at the complaint. There's nothing wrong with private transactions. So if the claim is the tags are like the ones in the roommate's case, the tags in the roommate's case directly caused violations of the Fair Housing Act. The tags in this case, the ones that lead a post to have the words private party on them, there's nothing illegal about that. But it doesn't have – why does the tagging in – it doesn't have to be illegal, right? The question is did you design it, did you set it up in a way that at least at the pleading stage would allow the complaint to survive dismissal on causation being plausibly pled. I don't think it's a matter of is the website illegal. No question you're not selling an illegal product. It's not heroin or anything like that. You're not selling anything. The forum, right? There's no doubt about that. But I don't know that that joins issue with what your adversaries have brought forward. I think that it does, and I'm trying to address the theory, but the theory is too abstract for any form of causation. That takes us – perhaps the plaintiffs push the district court to this position because it's a very abstract thing to say that this website is – it leads to more private sales, and there's something that's inherently bad about that when the Wisconsin Supreme Court has said that private sales are legal. That just couldn't be tortious conduct. And I'm not sure what the causational through line is if the idea is just negligent website design is tortious, and this is something they say on page 19 of their reply. They say we could have liability even if you never turned the website on. It's bad just to design it, and that separates out the design conduct, which took place, what, 10 years ago, and the injury are then more than 10 years apart. So it really is about the alleged negligent publication of third-party advertising. If you take out the third-party ad, you've broken the chain of causation that is the basis for their theory. The theory that they're advancing here is that people met each other because of third-party content. If you look at the supplemental appendix, page 113, page 14, there's a picture of the website there. It shows the third-party content. That's the relevant information that is the basis for their claim. It's the basis for causation. It's the basis for the alleged duty, and that's what the Wisconsin Supreme Court said. This third-party content is the basis for the duty that they allege. Those statements are binding. There's a gun in those pictures. It's not a gun that Arms List posted. It's a third-party gun. Brock Verstagen posted the picture, right? He's the third party. Nobody finds Brock Verstagen unless Brock Verstagen— I believe that's correct. In other words, if I were to go on it right now and try to buy a particular firearm and put the specs in that I'm looking for, unless I affirmatively change the default parameters, that transaction is going to consummate as a private transaction. I don't have to make an affirmative representation that I'm an authorized buyer, I'm not a dealer, etc., right? It's those default settings that I think your adversary is focused on against the backdrop of what they allege to be notice that you had, that the Mr. Schmitz of the world, prohibited buyers, could be looking to buy a firearm without any personal accountability. If it's tortious for a website to enable people to find information, that would be a unique tort, and it's not one that the Wisconsin courts have recognized. It's not one that any court has recognized. Websites enable people to find information. That's what they do. This is information that the plaintiffs would rather didn't circulate, but it's information that lawfully exists. The Wisconsin Supreme Court says so. I'm not sure how else to address your Honor's concern. So there's a large number of reasons why this court should affirm the judgment in favor of Arms List. We have substantial factor causation, legal proximate cause, and the Communications Decency Act. And perhaps I should say a word about personal jurisdiction, if you don't mind. So in the Bauer case, there is a dismissal for lack of personal jurisdiction, and the plaintiffs raised that issue in their opening brief. We address it, as we are allowed to do, and we also make the argument that Weber got personal jurisdiction wrong. I don't think— Did that require a cross appeal? I don't think so, Your Honor. Tell us why not. Well, for one, the cross appeal is not jurisdictional, which means it's pragmatic. As a practical matter, the opening brief raises the issue of personal jurisdiction in these consolidated appeals, so we're going to get to that issue regardless of whether we file the cross appeal or not. Second, the dismissal for lack of personal jurisdiction doesn't afford Mr. Gibbon any greater relief than he gets in connection with a dismissal pursuant to Rule 12b-6. In fact, you'd rather have a Rule 12b-6 dismissal because it has res judicata effect, whereas a dismissal for lack of personal jurisdiction does not. So if the question is, does Mr. Gibbon enlarge his rights by arguing personal jurisdiction on appeal, the answer is no, and you don't need a cross appeal in order to ask for the same dismissal or a lesser dismissal on personal jurisdiction grounds. So it's an alternative basis in Weber. It's a basis that the court probably has to reach in Bauer because the dismissal for personal jurisdiction there took place first, and you don't get to the merits unless you have jurisdiction. Since you're going to get to it, I would get to it in both cases and affirm as to Mr. Gibbons for lack of personal jurisdiction and affirm on the merits as to Armless under Rule 12b-6. Thank you, Mr. Sutherland. Thank you. Mr. Lowy, I'm going to give you three minutes. Thank you, Your Honor. To begin, while private gun sales are legal, private gun sales to someone who you know is prohibited or reason to know is illegal. Private gun sales of 200 guns that Mr. Caldwell did was illegal. Tell us what the reason to know that it would have been illegal is. For the two individuals who were the assailants here. Well, we need to get the facts. I mean, the Bauer case is easy because there you've got selling 200 guns is presumptively illegally engaging in the dealing in firearms without a license, and that's what Mr. Caldwell was convicted of. So I think that's just on its face, and that would be very easy for Armsless to find out and to disallow was illegal. And for the other, it's if you have reason to know that the person is prohibited. So, for example, if Armsless simply required that in a state like Wisconsin where you can simply upload your record, your court record, as a condition of proving you're a legal purchaser, if that were required by Armsless, Sarah Schmidt's killer would not have gotten a gun because he was prohibited, and he would have had to upload that order. So while a gun market, you can have a gun market that is not negligent, you can have a gun market that is negligent. And imagine if you had a gun market that you set up and you called it Guns for Killers, and you set it up in prisons and schools and terrorist training camps, and you said in big letters, we don't screen, we allow illegal sellers, and we allow illegal buyers. I'm not saying those are our facts, but if you say there's no liability ever for a gun market, you're blessing that sort of conduct where clearly you can be liable under Wisconsin law for the foreseeable result of that conduct. And by the way, there is a case in Ohio, Court of Appeals, Pavlides, where a gun show, a brick-and-mortar gun market, was held liable. They didn't sell a gun, but because of their negligent practices, they were liable for a subsequent shooting. Do you want to take a minute on the Communications Decency Act? Sure. Well, as Your Honor said, you've got the Wisconsin Court of Appeals decision and the Supreme Court decision. The Wisconsin Court of Appeals decision in Daniel is in accord with Seventh Circuit precedent, and Seventh Circuit precedent is correct because it applies the literal and intended meaning of the CDA, where a website can be liable for their own conduct, for their own content, and to Judge Scudder's point, can be liable as a co-author of postings when they presumptively make postings private sales. So for all those reasons, the CDA does not bar the action. And finally, it was repeated that there was no other opportunity for these killers to get their guns. There is no factual basis for that. That may be a general view that guns are easy to get. It may be that they want to submit facts, evidence. But the fact is, I don't think it's a defense, but even if it were a defense, what if we were able to prove in discovery that there was no other way for Sarah Schmitt's killer to quickly get a gun when he wanted one in his town in Wisconsin? What if we proved that armsless did corner the market on this sort of enabling of gun trafficking? Then there can at least be a factual issue of causation, at least for summary judgment. Thank you, Mr. Lowy. Thank you, Mr. Sullivan. The case will be taken under advisement.